RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0137p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-3800

MICHAEL A. PAGE,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 05-00716—David A. Katz, District Judge.

Submitted: March 17, 2008

Decided and Filed: April 3, 2008

Before: MARTIN, GIBBONS, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Andrew J. King, c/o LAW OFFICES OF TONY C. MERRY, Columbus, Ohio, for Appellant. Ava Rotell Dustin, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Michael A. Page pled guilty to one count of conspiracy to import cocaine and marijuana, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 963. The district court sentenced him to 204 months, within the recommended guidelines range of 168-210 months' incarceration. Page now appeals his conviction, arguing that the district court violated Federal Rule of Criminal Procedure 11(b)(1)(G) by not informing him of, and making sure he understood, the nature of the charge to which he pled guilty. Because we find the district court adequately ensured that Page understood the nature of the charge to which he pled guilty, we AFFIRM Page's conviction.

I.

Page's plea agreement contains no stipulated facts section, so we must look to the transcript of Page's change of plea hearing where the prosecutor read into the record the relevant factual background. According to the prosecutor, Page recruited females from the Sandusky, Ohio area to be drug couriers in 2001. The women were brought to Cleveland and then to New York, where they

were given airline tickets to travel to Guyana, South America. Once in Guyana, the women were "strapped" with cocaine and then would return to the United States, bringing the cocaine with them.

Page was allegedly responsible for recruiting at least eight females and one male to transport cocaine into the United States. Of those, only six of the females actually traveled to Guyana, and each of those women allegedly transported between two and four kilograms of cocaine back to the United States. Page was responsible for recruiting the drug couriers, helping them to obtain their passports, and transporting them from the Sandusky, Ohio area to Cleveland. When they returned from Guyana, Page picked them up in Cleveland, and paid each woman $10,000 for each trip she took.

Of the six women recruited by Page who transported cocaine from Guyana, one was apprehended in Guyana with 5.23 kilograms of cocaine on her person, and another was stopped in New York with approximately 3.5 kilograms of cocaine. According to the prosecutor, Page was responsible for the importation of between fifteen and fifty kilograms of cocaine from Guyana over the course of the conspiracy.

Page was indicted in two counts of a multiple-defendant, multiple-count indictment. He was charged in Count One with conspiracy to import cocaine and marijuana, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 963; and in Count Two with conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Page eventually pleaded guilty to Count One in exchange for the government's agreement to drop Count Two. He was sentenced to 204 months' imprisonment, within the suggested guidelines range of 168-210 months.

Page now appeals his conviction, arguing that his guilty plea was not a knowing waiver of his constitutional rights because he was never properly made aware of the nature of the charge to which he pled guilty, in violation of Federal Rule of Criminal Procedure 11(b)(1)(G).

## II.

### 1.   *Standard of Review*

Page failed to object during his plea colloquy to the district court's alleged violation of Rule 11(b)(1)(G). As such, we evaluate his claim under the heightened plain-error standard of review. *United States v. McCreary-Redd*, 475 F.3d 718, 721 (6th Cir. 2007) ("[A] silent defendant has the burden to satisfy the plain-error rule . . . ."(quoting *United States v. Vonn*, 535 U.S. 55, 59 (2002))). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* (quoting *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir.1998)).

### 2.   *Rule 11(b)(1)(G)*

Federal Rule of Criminal Procedure 11(b)(1)(G) "requires that, before a court accepts a guilty plea, it must ensure that the defendant understands, *inter alia*, 'the nature of each charge to which the defendant is pleading.'" *United States v. Valdez*, 362 F.3d 903, 908 (quoting FED. R. CRIM. P. 11(b)(1)(G)). This requirement is "integrally related" to Rule 11(b)(3)'s mandate that the district court determine that the guilty plea has a factual basis. *Id.* at 909. As this Court stated in *Valdez*, "Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Id.* at 909 (internal citations and quotation marks omitted). "Therefore, some rehearsal

of the elements of the offense is necessary for any defendant, and the failure to identify the elements of the offense is error and cannot be said to be harmless." *McCreary-Redd*, 475 U.S. at 723 (internal citations and alterations omitted). Page argues that because the district court did not identify the elements of the charge, it failed to properly advise him of the nature of the charge to which he pled guilty. According to Page, under *McCreary-Redd*, such a failure constitutes reversible error.

Page's argument that the district court did not adequately address the nature of the charge focuses on a two-question give and take during the hearing:

> The Court:     Have you read the indictment in this case?
>
> Mr. Page:      Yes, your Honor.
>
> The Court:     Any question in your mind that you don't understand the charges, which are also set forth in the plea agreement at paragraph 2, with respect to Count 1, conspiracy to import narcotics? Have you read that?
>
> Mr. Page:      Yes, your Honor.

While the second question above is less than clear, and would lead a rational person to query whether or not Page truly understood the nature of the charge to which he was pleading, this short back-and-forth with the district court is not representative of the entire transcript of Page's hearing. A review of the entire record of Page's change of plea hearing reveals that the district court met the requirements of both Rule 11(b)(1)(G) and Rule 11(b)(3) when it established a factual basis for Page's guilty plea, and ensured that Page understood the nature of the charge to which he pled guilty.

Specifically, Count One of the indictment, to which Page pled guilty, was included in the plea agreement which was read into the record by the government. While simply reading the criminal charge may not be enough to satisfy the requirements of Rule 11(b)(1)(G) in complex cases, *see, e.g., United States v. Syal*, 963 F.2d 900, 904-05 (6th Cir. 1992), it does bolster the government's argument that the district court took steps to ensure that Page understood the elements of the offense to which he pled guilty. In addition to having the plea agreement read into the record, the district court established that Page had reviewed his indictment and plea agreement with his attorney. After the two-question give-and-take upon which Page relies above, the district court confirmed that Page understood the rights he would be giving up, including the right to a jury trial, the right to an attorney, and the right to confront witnesses at the trial.

Most importantly, the district court instructed the government to "articulate for the record the summary of the evidence if this case went to trial." Following the district court's instruction, the government read into the record the facts, summarized at the beginning of this opinion, detailing Page's alleged involvement in the scheme to import cocaine into the United States. The district court then asked Page if he understood the evidence that the government planned to prove at trial against him, to which Page answered in the affirmative. The district court asked Page if he had anything else to add, to which Page's attorney offered a small correction to the facts read by the government. Only after this factual basis was determined, and only after ensuring that Page understood the rights he was giving up and the charge against him, did the district court accept Page's plea of guilty pursuant to the plea agreement.

While less than a model of clarity, the totality of the record supports the government's argument that the district court established a factual basis for Page's guilty plea, and that Page understood the nature of the charge to which he pled guilty. Accordingly, we find that Page has failed to meet the high burden required by the plain-error standard of review governing this case.

III.

Based on the foregoing, we AFFIRM Page's conviction.