NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0521n.06

No. 09-1037

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 17, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| BRIAN BROWN, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before:     KEITH, BOGGS, and MCKEAGUE, Circuit Judges.

**KEITH, Circuit Judge.**

Defendant Brian Brown ("Brown") pleaded guilty to one count of conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced Brown to a term of 108 months, which fell at the bottom of the court's calculated Guidelines range. Brown now appeals on the grounds that: (1) his plea was not knowing, voluntary, and intelligent; and (2) his sentence was procedurally and substantively unreasonable. We **AFFIRM** Brown's conviction and sentence.

1

I.

In early 2006, undercover officers purchased twelve grams of crack cocaine from Brown. Brown sold the substance outside his residence in Michigan. In April 2006, the FBI received word that William Hunter,[1] Reginald Orr, and others were involved in drug distribution in Michigan's Macomb and Wayne Counties. Local and federal law enforcement agents accordingly initiated a federal investigation in the area. Pursuant to court-authorized telephone taps, the FBI learned that Hunter supplied the contraband to Orr and Brown, each of whom operated separately.

The joint investigation laid the basis for a search warrant, which was executed at Brown's home on September 19, 2006. The search revealed pistols, pistol magazines, and paraphernalia associated with the distribution of drugs. The investigation concluded once the search warrants were executed. However, Brown's criminal behavior persisted. During a recorded conversation on May 16, 2007, Hunter stated that he regularly supplied Brown with cocaine. Days later, on May 27, Brown stated in a separate recorded conversation that he received a kilogram of cocaine each week from Hunter, generating a half-million dollars.

On July 11, 2007, a federal grand jury in the Eastern District of Michigan indicted Brown on one count, Count 2, of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(a). On the same day that the superseding indictment was entered, a federal magistrate judge ordered Brown detained pending a detention hearing. The following day, Brown, through counsel, pleaded not guilty to Count 2 of the superseding indictment. The court held a

---

[1]William Hunter is named as Brian Brown's co-conspirator in the second of two counts in the First Superseding Indictment. This appeal only concerns Count 2 because Count 1 charged Hunter, alone, with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

detention hearing and set an unsecured bond of $10,000. On January 31, 2008, Brown appeared before the district court with counsel. He pleaded guilty to Count 2, without a plea agreement.

In determining his applicable Guidelines range, Brown's Presentence Investigation Report ("PSR") indicated that he was a drug conspirator within the meaning of U.S.S.G. § 2D1.1(a)(3), resulting in a base offense level of 36. As the offense involved cocaine base, the base offense level was then reduced by two. U.S.S.G. § 2D1.1(i). The PSR added two levels because a firearm was used during the commission of the offense, and applied a three-level downward adjustment for acceptance of responsibility. U.S.S.G. § 2D1.1(b)(1); U.S.S.G. § 3E1.1(a)-(b). These calculations resulted in a total offense level of 33 which, combined with Defendant's classification as criminal history category I, generated a Guidelines range of 135 to 168 months.[2] Brown objected to the PSR on several grounds. First, he argued that he was entitled to a sentence reduction given his limited role in the conspiracy. Second, he requested leniency in light of his mother's extensive medical needs and his own. Finally, he argued that the wiretapped conversations yielded uncorroborated, and therefore inadmissible, evidence. In each case, the probation officer elected to maintain the presentence report as written. However, at sentencing, the court rejected the PSR's recommendation for a two-level increase for possession of a gun. The court therefore computed Brown's offense level as 31; his sentencing range, 108 to 135 months. Brown was ultimately sentenced to a term of 108

---

[2]This range was based upon the 12 grams of *crack* cocaine Brown sold the cooperating witness in February 2006, and the 56 kilograms of *powder* cocaine Brown admitted receiving in weekly installments over 14 months. That the PSR improperly considered the former sum in its calculation of the advisory Guidelines range is undisputed. (Appellant's Br. at 20; Appellee's Br. at 5.) The conspiracy charged ran from June 2006 until July 2007. The crack cocaine sale took place in the early months of 2006 outside of that time period. (PSR at 5.) As discussed *infra*, this error actually benefitted Brown.

months, at the very bottom of the Guidelines range, to be followed by three years of supervised release.

## II.

Brown first challenges the validity of his guilty plea. While this legal question is typically reviewed *de novo*, *United States v. Jones*, 403 F.3d 817, 822-23 (6th Cir. 2005), an exception exists where a defendant fails to challenge the plea in a lower court. *See United States v. Page*, 520 F.3d 545, 546-47 (6th Cir. 2008) (citations omitted). Under those circumstances, the claim is reviewed for plain error. *Id.* "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected [D]efendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* (quoting *United States v. McCreary-Redd*, 475 F.3d 718, 721 (6th Cir. 2007)).

Guilty pleas "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)); *see Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Voluntariness is determined by analyzing whether the plea "[was] extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" *Brady*, 397 U.S. at 753 (quoting *Bram v. United States* 168 U.S. 532, 542-543 (1897)). *See also Railey v. Webb,* 540 F.3d 393, 417 (6th Cir. 2008) (quoting *Hill v. Lockhart,* 474 U.S. 52, 56 (1985)). Whether a plea was entered knowingly and intelligently is a function of the defendant's

4

understanding of the nature and consequences of the charges against him. *See United States v. Webb*, 403 F.3d 373, 379 (6th Cir. 2005).

Brown argues that his guilty plea was not knowing, intelligent, and voluntary, as required under *Brady* and *Boykin*, because both he and the court were confused. Specifically, Brown argues that he was materially misinformed regarding: (1) the quantity of cocaine that he admitted possessing, and (2) the advisory Guidelines range associated with his plea. As to the former, Brown testified early in the hearing that the conspiracy involved only a single kilogram of cocaine. He proceeded to answer seventeen consecutive questions from the court about "a kilo," "the kilo," and "that kilo." Later in the hearing, in response to a pointed question from government counsel, Brown stated that Hunter supplied him with a kilo of cocaine each week for fourteen months. Those weekly installments amounted to over 56 kilograms of cocaine – a far cry from just one. The transcript therefore reveals that the disparity was clarified before the hearing concluded. The second point of confusion concerned Brown's advisory Guidelines range. Brown understood the recommended range to be 57 to 71 months, while the eventual PSR recommended a range of 135 to 168 months. The district court did not disabuse Brown of this mistaken impression at any point during the plea hearing. However, the court indicated that "other considerations" might influence whether the court would remain within, or vary from, the recommended Guidelines range.[3] Brown, himself, supplied

[3]*United States v. Hodge* is apposite. 259 F.3d 549 (6th Cir. 2001). In that case, the defendant argued that his plea was invalid because the district court did not advise him of the amount of loss that would form the basis of his offense level. We rejected Hodge's argument because "the district court need not identify a particular sentencing range under the Guidelines when accepting a guilty plea as long as the defendant is made aware of the maximum potential sentence and the fact that the Guidelines operate to create a sentencing range under the statutory maximum within which the district court may exercise its discretion." *Id.* at 553-54 (citing *United States v. Stephens,* 906 F.2d 251, 253-54 (6th Cir. 1990). In *Hodge,* as here, "the district court did not have the benefit of the

such considerations – the additional 55 or more kilograms of cocaine – toward the end of the hearing. Brown further failed to object to his liability for 56 kilograms of cocaine either before sentencing, when presented with the PSR, or afterwards.

Despite the aforementioned confusion, Brown's plea hearing was not infected with plain error. Brown testified that he was satisfied with the advice of counsel and that his plea was neither coerced nor incentivized. The district court methodically and comprehensively apprised him of his constitutional rights, and directly asked Brown whether he understood the charges against him. There is no evidence that Brown was incompetent or otherwise not in control of his mental faculties. *See Brady*, 397 U.S. at 756. Brown indicated that he had read the indictment and discussed the charge therein with counsel. Brown also satisfied the "minimum [requirement that] the defendant . . . understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty": he acknowledged receiving a kilo of cocaine each week for fourteen months. *United States v. Valdez,* 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States,* 523 U.S. 614 (1998)). Finally, the Sixth Circuit has held that "a defendant need not know all the possible consequences of his plea, . . . [but] he must be aware of the maximum sentence to which he is exposed." *Ruelas*, 580 F.3d at 408. Brown expressly acknowledged that his crime carried a maximum penalty of twenty years.

The "Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge, but permits a court to accept a guilty plea, with its accompanying

_____

PSR's conclusions, which inform the district court's findings for amount of loss." *Id.* Also as in *Hodge*, the district court discussed Brown's maximum potential sentence and the court's discretion to either remain within or depart from the Guidelines range. It follows that Brown's plea, like Hodge's, was valid.

waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 623 (2002) (citing *Brady*, 397 U.S. at 757); *see also Ashbaugh v. Gundy*, 244 F. App'x 715, 717 (6th Cir. 2007) (noting that a plea may be valid even if misapprehensions include "likely penalties"); *Stephens,* 906 F.2d at 253 ("[T]he mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement."). Brown acknowledged receipt of, and accepted responsibility for, the total quantity of cocaine giving rise to the charge against him. He therefore did not have "'such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.'" *United States v. Lukasik*, 250 F. App'x 135, 137 (6th Cir. 2007) (quoting *Berry v. Mintzes,* 726 F.2d 1142, 1147 (6th Cir. 1984) (citations omitted)). "[A] comprehensive examination of the totality of the circumstances, . . . rather than . . . any particular record inquiry," *Berry,* 726 F.2d at 1147 (internal quotation marks and citation omitted), reveals that Brown pleaded knowingly and intelligently.

III.

Following *United States v. Booker,* 543 U.S. 220 (2005), we review a district court's sentencing decisions "under a deferential abuse-of-discretion standard," for reasonableness. *Gall v. United States,* 552 U.S. 38, 41 (2007); *United States v. Stephens,* 549 F.3d 459, 464 (6th Cir. 2008). Brown failed to object in the district court to the portion of the PSR that calculated his offense level under U.S.S.G. § 2D1.1(a)(3) and § 2D1.1(c)(2). The question before this court, raised for the first time in Brown's appellant brief, is therefore whether this error in calculation requires reversal. In *United States v. Bostic,* 371 F.3d 865 (6th Cir. 2004), the court held that "[i]f a party

7

does not clearly articulate any objection and the grounds upon which the objection is based, when given [a] final opportunity to speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal." *Id.* at 872-73; *see also United States v. Vonner,* 516 F.3d 382, 385-89 (6th Cir. 2008) (en banc) (applying *Bostic'*s forfeiture rule to procedural-reasonableness claims). To establish plain error, Brown must therefore show: (1) an error; (2) that was plain, *i.e.,* obvious or clear; (3) that affected Brown's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings. *United States v. Alexander,* 543 F.3d 819, 822 (6th Cir. 2008) (quoting *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998)). He has failed to meet this burden.

The parties agree, and the record reflects, that the district court did not accurately calculate Brown's Guidelines range. The first and second elements of the test are met: there was error, and it was clear. *See Alexander*, 543 F.3d at 822. While the charged conspiracy ran from June 2006 until July 2007, Brown's Guidelines range improperly included a 12-gram crack sale he made in February 2006. Accordingly, the range reflected both the 56 kilograms of powder cocaine Brown admitted receiving in weekly installments over 14 months, and the 12 grams of crack cocaine Brown sold to a cooperating witness. Pursuant to U.S.S.G. § 3D1.2, the PSR grouped the conspiracy and possession with intent to distribute cocaine offenses. 21 U.S.C. § 846; 21 U.S.C. § 841. Based upon the PSR's assumption that at least 50 but fewer than 150 kilograms of cocaine were attributable to Brown for these offenses, Brown's base offense level was 36. *See* § 2D1.1(c)(2). However, because the offense involved cocaine base, or crack cocaine, the PSR applied a two-level downward

8

adjustment under § 2D1.1(d)(i).  The downward adjustment was inappropriate because the crack

offense pre-dated the conspiracy.[4]

However, Brown has not shown that the error compromised his substantial rights. *See United*

*States v. Olano*, 507 U.S. 725, 734 (1993).  Indeed, Brown benefitted from the inclusion of the crack

sale in the calculation of his Guidelines range.  *Cf. Bostic*, 371 F.3d at 877 (holding that the district

court's sentencing error "affected the *government's* and the United States citizens' substantial rights

because it drastically reduced [the defendant's] sentence") (emphasis added) and *United States v.*

*Erpenbeck*, 532 F.3d 423, 434 (6th Cir. 2008) (noting that the defendant "should consider himself

fortunate that the district court miscalculated the amount of loss in his favor") (internal citation

omitted).  Given that the improperly calculated Guidelines range reduced Brown's sentence, the error

does not affect his substantial rights and does not warrant reversal.  *See, e.g., United States v.*

*Vaughn*, 519 F.3d 802, 805 (8th Cir. 2008) (stating that the third prong requires a showing that "but

for the error [the defendant] would have received a more favorable sentence") (internal citation

omitted).  As Brown failed to meet the third prong, we need not analyze the fourth.  *See United*

*States v. Hadley*, 431 F.3d 484, 509 n.19 (6th Cir. 2009).

IV.

Brown argues that his sentence was procedurally unreasonable because the district court

failed to adequately address the 18 U.S.C. § 3553 factors.  A sentence is procedurally unreasonable

---

[4] The United States adds, correctly, that the subsection was misapplied because it includes a limitation barring reduction where it "results in a combined offense level that is less than the combined offense level that would apply . . . if the offense involved only the other controlled substance[.]" U.S.S.G. § 2D1.1, app. n. 10(D)(ii)(II).

if the district court fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51. We review the district court's application of the Sentencing Guidelines *de novo* and the district court's findings of fact at sentencing for clear error. *See United States v. Hunt,* 487 F.3d 347, 350 (6th Cir. 2007).

A district court must "explain its reasoning to a sufficient degree to allow for meaningful appellate review" and "set forth enough facts to satisfy this court that it considered the parties' arguments and had a reasoned basis for exercising its own legal decision-making authority." *United States v. Vowell,* 516 F.3d 503, 510 (6th Cir. 2008). Explanations for sentences falling within the Guidelines range "need not be lengthy." *United States v. Wilms,* 495 F.3d 277, 280 (6th Cir. 2007). Indeed, "[s]ometimes a judicial opinion responds to every argument; sometimes it does not[.]" *Rita v. United States,* 551 U.S. 338, 356 (2007). The district court need not have "explicitly state[d] that it ha[d] considered and rejected each of defendant's arguments." *United States v. Berry*, 565 F.3d 332, 341 (6th Cir. 2009).

The district court gave both parties an opportunity to argue for the sentence they deemed appropriate and did not treat the Guidelines as mandatory. The court also appears to have adequately considered a majority of the § 3553 factors, including: (1) Brown's characteristics ("he has been a caregiver for a wheelchair-bound mother and a father of children who are present in the courtroom"); (2) the need to provide Brown training and treatment ("I will recommend the 500-hour drug treatment"); (3) pertinent policy considerations ("there is no necessary correlation between weight or amount and culpability;" "we are depopulating our African American male population at an

alarming rate"); (4) the need to protect the public; (5) the need for deterrence; and (6) the need to avoid unwarranted sentencing disparity. *See* 18 U.S.C. § 3553(a). As to this last factor, the transcript reflects that the court entertained the argument and considered the supporting evidence. Ultimately, the judge stated that he had "looked at the 3553 factors, and I don't find any of them that apply in this case . . . I am satisfied that none of the factors under 3553(a) call for a variance from the guideline recommendation." "[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation . . . because [c]ircumstances may well make clear that the judge rests his [or her] decision upon the Commission's own reasoning that the Guidelines sentence is . . . proper . . . in the typical case." *Rita*, 551 U.S. at 356 (internal quotation marks omitted). It follows that the district court's discussion of the § 3553 factors was sufficient, even though the court did not explicitly clarify the nature and circumstances of the offense[5] and Brown's criminal history.[6] Indeed, these details were outlined in the PSR and drew no objections from either party. *See* 18 U.S.C. 3553(a)(1). Brown's sentence was not procedurally unreasonable.

---

[5] The district court was initially confused but immediately corrected itself about the scope of the charged conspiracy. The court declared Brown to be "part of a group of one, two, three, four, five, six, seven, eight defendants." However, the indictment only charged Brown with conspiring with supplier William Hunter. Indeed, the PSR explicitly states that Reginald Orr, the mastermind of the eight-person conspiracy to which the district court referred, was "aware of [Brown's] drug distribution," but that the two "operated separately." Government counsel clarified that "this defendant was not charged in the conspiracy involving the other defendants . . . . This was separate." The district court responded with incredulity. "Pardon?" he asked. "How many were involved?""He [Brown] had nothing to do with [the eight-person conspiracy]?" Standing corrected, the district court indicated that it would "have to be careful" and promptly issued Brown a 108-month sentence.

[6]The district court's only reference to Brown's criminal history, which included no criminal convictions, was a passing reference to Brown's criminal history category of I.

V.

After considering procedural soundness, we consider "the substantive reasonableness of the sentence imposed." *Gall*, 552 U.S. at 51. A sentence is substantively unreasonable if the district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Sentences imposed within a properly calculated Guidelines range enjoy a presumption of substantive reasonableness on appeal. *Vonner*, 516 F.3d at 389-90. Given the miscalculation of Brown's Guidelines range, Brown's sentence is not presumptively reasonable. However, the district court adhered to the Guidelines range outlined in the PSR and arrived at the sentence only after referencing and considering many of the § 3553 factors. The transcript does not reflect that the district court gave unreasonable weight to any factor, and the court engaged counsel to seek clarification about the one factor of which it was uncertain. For these reasons, Brown's sentence was not substantively unreasonable. Indeed, his 108-month term fell 27 months below the low end of the Guidelines range that should have been applied.

VI.

For the foregoing reasons, we **AFFIRM** Brown's conviction and sentence.

12