NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0752n.06

No. 08-2537

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Dec 10, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | ON APPEAL FROM THE |
| v. | : | UNITED STATES DISTRICT COURT |
| | : | FOR THE EASTERN DISTRICT OF |
| MARCIA OTTOMAN | : | MICHIGAN |
| | : | |
| Defendant-Appellant. : | | |

**BEFORE: SUTTON and GRIFFIN, Circuit Judges; BERTELSMAN, District Judge.**[*]

**OPINION**

**BERTELSMAN, District Judge:**

Defendant-Appellant, Marcia Ottoman, appeals her conviction for one count of impersonating an officer of the United States and one count of wire fraud. Ottoman entered a guilty plea, without the benefit of any Rule 11 agreement, on April 29, 2008. On November 20, 2008, Ottoman was sentenced to twenty-two months in prison on each count, to be served concurrently. Ottoman contends that the district court erred in accepting her guilty plea because it was taken without her full consent and that a factual basis for the plea was lacking. Ottoman also argues that the plea colloquy was flawed in that she was erroneously advised by the court of the applicable sentence guideline range, in violation of Fed. R. Crim. P. 11(b)(1)(M).

_____

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

For the reasons stated below, we **AFFIRM**.

## I.

On May 9, 2007, Marcia Ottoman was indicted on one count of impersonating an officer of the United States under 18 U.S.C. § 912 and one count of wire fraud under 18 U.S.C. § 1343. (R.7).

The indictment stems from Ottoman's involvement in a scheme to force the unlawful eviction of some tenants from her elderly in-laws' farm and subsequently take control of her in-laws' real property. Part of the scheme involved email communications through a Yahoo! email account. Using this email account, Ottoman enlisted the aid of a local attorney in crafting and delivering a fraudulent letter to her in-laws in order to frighten them into unlawfully evicting their tenants.

The fraudulent letter that was ultimately delivered to Ottoman's in-laws had a Department of Justice letterhead and a signature block with the name and title of an actual Assistant United States Attorney in the Eastern District of Michigan. The AUSA whose name was used on this letter did not know Ottoman nor was he involved in creating or signing the letter.

After receiving the letter, Ottoman's in-laws became suspicious and contacted local law enforcement. In due course, the FBI became involved in the investigation, and Ottoman was subsequently arrested and prosecuted.

On April 29, 2008, Ottoman appeared in district court in order to enter a plea of guilty to the two criminal counts against her. (R.46 at 2:18-22). Initially, Ottoman attempted to enter a *nolo contendere* plea but the court rejected the rationale put forth by Ottoman for a *nolo* plea. (*Id.* at 8-10). While there was some discussion of a possible Rule 11 agreement between the United States

and Ottoman, the agreement was ultimately rejected by Ottoman. Ottoman proceeded to plead guilty without the benefit of any plea agreement. (*Id.* at 10:4-11).

During the plea colloquy, the court inquired into Ottoman's mental state. While Ottoman admitted to a fairly recent diagnosis of a personality disorder, her attorney indicated that there were no limitations on her ability to understand or appreciate the proceedings in which she was participating. (*Id.* at 15:15-21).

Ottoman was placed under oath and gave testimony during the plea colloquy. Ottoman was also cross-examined by the prosecution during the plea colloquy. After this inquiry, the court accepted Ottoman's plea of guilty to one count of impersonating a federal officer and one count of wire fraud.

On November 20, 2008, Ottoman appeared before the district court for sentencing. During the sentencing, Ottoman raised several objections to the pre-sentence report. (R.53 at 27-28). Ottoman objected to the PSR's contention that, subsequent to her guilty plea, she obstructed justice and did not accept responsibility for her criminal conduct.

The prosecution propounded evidence that, at some time after her guilty plea, Ottoman committed perjury during a state-court civil proceeding. Specifically, the United States showed that, while under oath, Ottoman denied being a convicted felon and denied ever having pled guilty to the offenses of wire fraud and impersonating a public official. (*Id.* at 29). The district court rejected Ottoman's explanation for her post-plea conduct and enhanced her sentence because of the perjury by adding two points to the base offense level for a total offense level of twelve. As a result, the new sentencing guideline range was ten to sixteen months.

The district court then went on to announce an upward departure from the sentencing guideline range based on § 4A1.3(a)(1) of the U.S. SENTENCING GUIDELINES MANUAL. (*Id.* at 58). The government argued, and the court agreed, that the previously calculated criminal history category underrepresented the likelihood that Ottoman would commit other crimes. (*Id.* at 56-58). The court ultimately imposed a sentence of twenty-two months imprisonment for each count, to run concurrently. (*Id.* at 58).

On November 24, 2008, Ottoman filed a timely notice of appeal. (R.41).

## II.

This court reviews the district court's acceptance of a guilty plea for plain error under Fed. R. Crim. P. 52(b). The plain error standard of review applies in cases where a defendant fails to object to any deficiency during the plea colloquy but then later appeals the conviction on the grounds that the plea colloquy was erroneous. *United States v. Vonn*, 535 U.S. 55, 58 (2002); *United States v. Page*, 520 F.3d 545, 546 (6th Cir. 2008).

To establish plain error, a defendant must show, "(1) that there was an error, (2) that is clear and obvious, and (3) that affects substantial legal rights. If the appellant makes that showing, the court has discretion to consider the error if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Angel*, 355 F.3d 462, 469 (6th Cir. 2004) (citation omitted).

## A.

Ottoman argues that her plea lacked the requisite consent and factual basis under Fed. R. Crim. P. 11. A review of the proceedings proves otherwise.

Ottoman initially tried to enter a *nolo* plea. (R.46 at 2). When her *nolo* plea was rejected by

the court, Ottoman persisted in her desire to enter a guilty plea.

| | |
|---|---|
| The Court: | . . . So for all of those reasons the Court declines to accept a plea as a nolo plea. |
| Defense Counsel: | Judge, at this time, Miss Ottoman is prepared to still tender a plea of guilty. |
| . . . . | |
| Defense Counsel: | Judge, may I just voir dire briefly? Miss Ottoman, do you understand that because the Judge has declined our request for you to plead no contest, that you would have to state facts sufficient for the Court to find that you are guilty of the offenses that you're charged within the Indictment? Otherwise, she could not accept your guilty plea if you do not admit your guilt and waive your right to remain silent. Do you understand that? |
| Ms. Ottoman: | Now I understand it. |
| The Court: | And you are prepared to do that today? |
| Ms. Ottoman: | I think so. |
| The Court: | You said you think so? |
| Ms. Ottoman: | I think so. |

(*Id.* at 10, 16-17).

While Ottoman argues that her response of "I think so" was equivocal, at no time during the

plea colloquy did she voice an objection to her plea, nor did she state any desire to change her plea

to something other than guilty (the earlier *nolo* attempt notwithstanding).

Importantly, at the conclusion of the proceedings, the court asked Ottoman if she had any

questions about what had been done. Ottoman's response was "no." (*Id.* at 43:14-16). Furthermore,

5

at sentencing, Ottoman again did not raise any objection to any of the circumstances surrounding her earlier guilty plea. (R.53). Ottoman's argument that her plea was accepted without her full consent is not well taken.

With respect to the factual basis for her plea, again the record reveals ample testimony to refute Ottoman's argument.

On Count One, Ottoman initially minimized her involvement and attempted to shift the blame to her attorney for creating and delivering a letter to her elderly in-laws that appeared to be from the Department of Justice and signed by a local Assistant United States Attorney. As a result, the court naturally expressed some hesitation over accepting Ottoman's plea of guilty to Count One. (*Id.* at 28-29).

However, upon further questioning, Ottoman did state a sound factual basis for her plea of guilty to the crime of impersonating a federal officer.

United States: Did you eventually speak to Special Agent Jim Brennan of the FBI about this case?

Ms. Ottoman: Yes.

. . . .

United States: Miss Ottoman, that letter that's before you, Government's Exhibit A, in December of 2006 when you met with Agent Brennan, did you tell him that you wrote that letter?

Ms. Ottoman: He asked me if I wrote a letter and I said yes. But he didn't -- we did not expound further or ask any additional questions. He was yelling at me for a good --.

United States: Regarding -- this is the letter we're talking about.

6

| | |
|---|---|
| Ms. Ottoman: | I believe so. |
| United States: | Did you tell Agent Brennan that you wrote that letter? |
| Ms. Ottoman: | Yeah, but -- |
| United States: | Thank you, Your Honor. |

(*Id.* at 36:15-17, 38:11-24).

With respect to Count Two, the record again yields a sufficient factual basis for Ottoman's guilty plea.

| | |
|---|---|
| The Court: | So you generated emails using [the Assistant U.S. Attorney's] name. |
| Ms. Ottoman: | Yes, and I would send them to John Forzak and he would likewise do the same and send emails using that same account and send them back to me. |
| . . . . | |
| United States: | Did you tell Mr. Brennan, Agent Brennan you had written the emails? |
| Ms. Ottoman: | I remember specifically talking about all of the emails, but I admitted to the ones that I knew about. |
| United States: | What you admitted is that you admitted that you had sent them? |
| Ms. Ottoman: | Yep, and I believe I told that to the Judge today. |

(*Id.* at 30:8-12, 37:4-12).

The series of emails referred to was sent via a Yahoo! email account that was purportedly created by Ottoman's attorney. (*Id.* at 29:15-25, 36:3-14). The gist of these emails was "to demand that [Ottoman's] in-laws evict people from farm property." (*Id.* at 31:15-16).

Ottoman admitted to assisting in "revising the draft and adding to its length." (Id. at 33:21-24). The draft became a letter that "was signed by [the Assistant U.S. Attorney]," and

7

defendant/appellant was "responsible for putting parts in it and taking parts out of it." (*Id.* at 34:7-9).

Ottoman knew that her attorney was going to "deliver [the letter] himself." (*Id.* at 34:10-19).

She knew the resulting letter would be delivered to her in-laws "at some point [in] time." (*Id.* at 35:7-12). She admitted again that it was "her plan to get the tenant evicted from the property" so she and her husband could eventually move in. (*Id.* at 35:13-22).

At the end of the plea colloquy, counsel was asked if he was satisfied that Ottoman "has made out the elements of a violation of Impersonating an Officer of the United States and Wire Fraud" and counsel stated that he was satisfied. (*Id.* at 42:16-25).

Thus, the totality of the plea hearing clearly indicates that the district court met the requirements of Rule 11(b)(1)(G) and Rule 11 (b)(3) for each of the two counts to which Ottoman pled guilty. "[T]he district court may determine the existence of the . . . factual basis from a number of sources, including . . . a statement from the defendant." *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995) (citation omitted); *United States v. Goldberg*, 862 F.2d 101, 105 (6th Cir. 1988). Ottoman's argument that her plea lacked a sufficient factual basis is without merit.

B.

Ottoman also complains that she was incorrectly advised by the court during the plea colloquy as to what the likely sentence range would be for the crimes to which she was pleading. Once again, a review of the record dispels any notion that Ottoman was improperly advised or otherwise misled about what her sentence would be.

During the plea colloquy, Ottoman was clearly informed of the maximum possible sentence for the crimes to which she was about to plead guilty.

| United States: | There is no mandatory minimum penalty. Under Count One the maximum is three years imprisonment and $250,000 -- and/or. *Count Two, the maximum possible penalty is twenty years in prison and/or $250,000.* |
| --- | --- |
| The Court: | Thank you. Mrs. Ottoman, do you understand those statutory penalties? |
| Ms. Ottoman: | *Yes.* |

(R.46 at 21:8-15) (emphasis added).

Ottoman was also instructed that she was pleading guilty without the benefit of a Rule 11 agreement or any promises made therein. The court also clearly communicated to Ottoman that a sentence that exceeded the calculated range was possible.

| Defense Counsel: | Do you have a question? |
| --- | --- |
| Ms. Ottoman: | Well, I don't want to jam myself into something. I was just to the understanding that probation was a possibility. |
| The Court: | *It is a possibility, but that doesn't mean you're going to get it.* Judge Cook will -- you will be referred to the Probation Department and it's going to make -- prepare a very extensive report that will have quite a bit of information about you, about the crimes that you involved yourself in and he's going to use that to fashion a sentence. He certainly has to take into account the Guidelines, which are zero to six months and he can take into account other things as well. Mr. Niskar said he's going to raise the IME, the Independent Medical Examination and its contents. So there are lots of things that Judge Cook can look at in deciding what sentence to give you. *He can sentence you within that range of zero to six months, which could mean time in prison. He could give you probation. He could sentence you to more than zero to six months, but no promise can be or representation can be made to you right now about the sentence you will get.* |

| | |
|---|---|
| Ms. Ottoman: | I think the only answer that I have to that is when the Rule 11 was offered to us, it was to my understanding that it would guarantee probation and no incarceration, if I phrased that right. |
| Defense Counsel: | No. The U.S. Attorney's Office has agreed not to oppose probation if Judge Cook -- if that's what he decides to do, *but there has been no promises made to you that you will receive probation or that you will receive any type of lenient sentence, is that true?* |
| Ms. Ottoman: | *I believe so.* |
| United States: | *Your Honor, the Government, U.S. Attorney's Office has not made that representation. There is no Rule 11 Agreement.* |
| The Court: | But in the Rule 11 Agreement that was on the table, did it address probation? |
| United States: | Yes, zero to six. *Probation was a possibility.* |
| The Court: | *And it still is, but you are not pleading under that Rule 11, so Judge Cook is really not bound to accept that.* |

(*Id.* at 23-24) (emphasis added).

Ottoman contends that while no "promises" were made, her ultimate twenty-two month sentence exceeded her expectations based on a zero to six-month sentencing guideline range. Ottoman conveniently overlooks the fact, however, that she committed perjury after the plea but before the sentencing.

The sentencing judge enhanced her sentence, in part, by reason of this misconduct which obviously could not have been discussed during the plea colloquy. The court notes that Ottoman does not seek review of the addition of two points to the base offense level as result of her post-plea misconduct, nor of the upward departure of the guideline range based on § 4A1.3(a)(1).

Ottoman was specifically advised by the court, "no promise can be or representation can be made to you right now about the sentence you will get.'"

### III.

Therefore, we hold that not only was there no plain error, there was no error of any kind in Ottoman's plea proceedings.

AFFIRMED.