**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  12a0305n.06

**No. 10-1925**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Mar 19, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| STEVEN ANDERSON, | ) ) ) | |
| Defendant-Appellant. | ) ) ) | |

Before:  COLE, GILMAN, and WHITE, Circuit Judges.

PER CURIAM.  After a jury trial, appellant Steven Anderson was convicted of two counts (abusive sexual contact with S.P. and attempted aggravated sexual abuse of S.M.) and acquitted of one count (abusive sexual contact with S.M.).  The court sentenced Anderson to a term of twenty-four months on the count of abusive sexual contact and 180 months on the count of attempted aggravated sexual abuse, to run concurrently, followed by a ten-year period of supervised release.  Anderson appeals his conviction of attempted aggravated sexual abuse of S.M. on the grounds that the district court abused its discretion when it excluded evidence of his prior sexual acts with S.M. and when it refused to accept a plea agreement providing for a binding sentence of ninety-six months.  Because we conclude that the district court abused its discretion in excluding Anderson's proffered evidence and that the error was not harmless, we vacate and remand for a new trial.

**I.**

Anderson was indicted on November 19, 2008 for violations of 18 U.S.C. §§ 2244(b) and 2241(a)(1).  Two weeks before trial, Anderson filed a motion pursuant to Federal Rule of Evidence ("FRE") 412(c) to introduce evidence of his prior sexual history with S.M.  The charges relating to S.M. both concerned sexual acts that occurred on or about September 23, 2008, in S.M.'s office at the Grand Traverse Band of Ottawa and Chippewa Indians' Medicine Lodge ("Medicine Lodge").  In his motion, Anderson states that he and S.M. had a 10 to 12-year history of sexual activity that included weekly sexual encounters at the Medicine Lodge, where Anderson was also employed, in 2003 and 2004.  According to Anderson, the acts took place at the Medicine Lodge both because he found the risk of being caught exciting and because it was difficult for S.M. to meet after work without arousing her husband's suspicion.  The motion claims that the last sexual encounter between Anderson and S.M., prior to the acts alleged in the indictment, occurred in the late fall of 2007 at S.M.'s house while her husband was away.

The government conceded that Anderson's previous sexual history with S.M. could be admitted to demonstrate consent, but maintained that Anderson's claim of engaging in sexual acts with S.M. in various rooms of the Medicine Lodge did not constitute "specific instances of sexual behavior by the alleged victim" as required by FRE 412(b)(1)(B).  The government further argued that the probative value of any previous sexual contact between Anderson and S.M. was outweighed by unfair prejudice.

During the final pretrial conference on February 1, 2010, the court informed Anderson that it would exclude any previous sexual encounters with S.M. that did not occur in the Medicine Lodge.

The court then held an *in camera* hearing to discuss the admissibility of the 2003 and 2004 acts in the Medicine Lodge. Anderson testified, and the court denied his motion from the bench.

At trial, both S.M. and Anderson testified. Both parties agreed that Anderson went to the Medicine Lodge to handle a health-related matter, and then went to S.M.'s office and engaged in approximately ten minutes of small talk with the door open. The parties' versions of events then diverge significantly. According to S.M., during their conversation another employee, Donna Dunford, stopped by S.M.'s office but immediately left upon seeing Anderson. After the employee left and S.M.'s conversation with Anderson resumed, S.M. diverted her attention to her computer screen. Unbeknownst to S.M., Anderson then stood up, walked behind her, and slipped his hand inside her shirt, touching the top portion of her right breast. S.M. told Anderson to stop, turned around, and put her hand on Anderson's gut to push him away. At this point, S.M. saw Anderson's erect penis outside of his pants. Anderson then told S.M. to "suck it," grabbed her head, and pulled it toward him. S.M. pulled her head away and told him to stop. Anderson then placed his penis back into his pants and stated he had to go and see his sister.

As part of her testimony, S.M. admitted that she had a romantic relationship with Anderson in 1998 but claimed she had not been physically involved with him since that time.

Anderson testified that at some point during his conversation with S.M. he asked to "suck her boobs." After S.M. smiled, Anderson walked around to her side of the table and bent over while S.M. pulled out her right breast. Anderson briefly had oral contact with S.M.'s breast until S.M. said that someone was approaching. S.M. then put her breast back into her shirt and Anderson walked back to his chair and sat down. Once they realized that no one was nearby, S.M. and Anderson had

3

a few more minutes of small talk, which included a plan to meet for a sexual encounter later in the week. Anderson then asked if they could resume their earlier sexual activities. When they did, S.M. began to fondle Anderson's testicles through his pants. Throughout this encounter, S.M. would look around to see if anyone was approaching. S.M. then proceeded to massage Anderson's penis through his pants. When S.M. momentarily turned away, Anderson pulled his erect penis out of his pants. When S.M. turned back, Anderson asked her to "lick it or kiss it." S.M. told Anderson not to do that because they would both be caught. Immediately thereafter, someone, later presumed to be Ms. Dunford, walked into S.M.'s office. Anderson then turned around, discretely placed his penis back in his pants, and went back to his chair. When the employee left, Anderson and S.M. resumed their conversation for a few minutes until Anderson departed.

Anderson's theory at trial was that S.M. consented to the acts that took place in her office, but subsequently alleged criminal acts by Anderson out of fear that she would lose her job because Ms. Dunford had witnessed the acts.

There were no other witnesses to the incident.

## II.

Anderson claims the district court erred when it denied him the opportunity to present evidence about his prior sexual relationship with S.M.

FRE 412, commonly referred to as the federal "rape-shield" law, generally prohibits the admission of evidence offered to prove a victim's sexual pre-disposition or that the victim engaged in other sexual acts. Fed. R. Evid. 412. Rape-shield laws are "designed to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual

behavior." *Michigan v. Lucas*, 500 U.S. 145, 146 (1991). Notwithstanding the important privacy interests of rape victims, Rule 412 carves out three exceptions to this general rule, two of which are relevant here.

> Rule 412(b) states, in pertinent part:
>
> (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
> ...
> (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
>
> (C) evidence the exclusion of which would violate the constitutional rights of the defendant.

Fed. R. Evid. 412(b).

Although the language of Rule 412(b)(1)(B) is unqualified, it is well accepted that the admissibility of prior sexual acts between the accused and the alleged victim in order to prove consent is not absolute. A court can consider temporal factors, such as the length of time between the previous sexual act and the alleged offense, to determine whether such evidence is admissible. *See United States v. Saunders*, 736 F. Supp. 698, 702-03 (E.D. Va. 1990) (finding sexual history between victim and defendant that preceded alleged rape by three years admissible although it was a "manifestly close question"); *cf. United States v. Pablo*, 625 F.3d 1285, 1302 (10th Cir. 2010) (evidence that victim made sexual advances towards co-defendant the same night of the alleged rape not probative of consent because it "occurred some time before the alleged rape and in a different location from where the alleged rape occurred"). Additionally, the proffered evidence must be relevant to the defense of consent. Charles Alan Wright & Kenneth W. Graham, 23 *Federal*

*Practice & Procedure,* §5389 at 604 (1980); *see also United States v. Ramone*, 218 F.3d 1229, 1238

(10th Cir. 2000) (excluding victim's statement to third party that she previously used inanimate

objects as part of sexual acts with defendant upon finding that evidence not probative of whether

victim's sexual acts after a brutal beating by the defendant were consensual); *cf. United States v.*

*Street*, 531 F.3d 703, 708 (8th Cir. 2008) (finding Rule 412(b)(1)(B) did not require admission of

letters and emails that described sexual relationship between alleged victim and defendant in trial

for sexual exploitation of a minor  because consent was not a defense to the crime).  The legislative

history of Rule 412 suggests courts should consider "all of the facts and circumstances surrounding

the evidence" when determining admissibility.  124 Cong. Rec., H1 1944 (daily ed. Oct. 10, 1978,

remarks of Rep. Mann).  Further, as mandated by Rule 412 itself, courts must consider whether the

evidence is otherwise admissible under the Federal Rules of Evidence.  Especially important is Rule

403, which provides that relevant evidence "may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.

R. Evid. 403.

Here, Anderson sought to introduce two types of evidence: 1) three instances of prior sexual

activity with S.M. in 2007 that occurred in her garage and house ("2007 acts"); and 2) evidence of

weekly sexual encounters with S.M. in 2003 and 2004 that occurred at the Medicine Lodge ("Lodge

acts").

Prior to Anderson's testimony at the *in camera* hearing, the court instructed defense counsel

that his offer of evidence would be restricted "to similar acts which occurred in fairly close proximity

and time within the same venue." The court explained that the venue restriction was important

because the 2007 acts allegedly took place in private settings while the indicted offenses occurred

in a public place. Although the court acknowledged there was no case-law that discussed a venue

requirement, the court thought such a requirement appropriate in this case because of the

extraordinary circumstances involved; namely, attempted oral sex in a public place with the door

open. The court also stated that Anderson's evidence regarding the Lodge acts would be excluded

for the same reason absent a showing that the acts occurred in a public place within the Medicine

Lodge.

> After Anderson's testimony, the court ruled as following regarding the Lodge acts:
>
> Under Rule 412, it's my specific finding that the alleged instances which happened in 2003 and 2004 are not relevant to the events of 2008 for a number of reasons:
>
> Number one, the lapse in time is significant.
>
> Number two, I find that the defendant's testimony is a good deal less than completely credible in terms of where and why these encounters allegedly occurred, and they are inadequately specific to meet the requirements of the rule.
>
> Further, I think that they do not have the necessary probative value to outweigh the danger of unfair prejudice, particularly to the victim whose privacy rights are specifically intended to be protected by the rule.
>
> I also think that they fail to show in any way a pattern of conduct by which the defendant could establish, could reasonably establish his claim of consensual sexual acts to the extent that the defendant would be deprived of any constitutional right under the Sixth Amendment or otherwise.

R. 95 at 42-43.

A.

We review a district court's decision to exclude evidence under the abuse-of-discretion standard. *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005). "A district court is considered to have abused its discretion when this court is left with the definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Copeland*, 321 F.3d 582, 596 (6th Cir. 2003) (internal citations omitted).

B.

In this case, Anderson's sole defense was consent. There were no witnesses to the offenses alleged in the indictment and no physical evidence to indicate that a non-consensual act occurred. Therefore, the only evidence the jury heard about the events on September 23, 2008 were conflicting statements from S.M. and Anderson, as well as testimony from S.M's co-workers and a law enforcement official that S.M. looked upset when she described the activities that took place in her office. As a result of the district court's ruling, the jury did not hear any testimony about the purported long-term sexual relationship between Anderson and S.M., nor any information about the allegedly consensual sexual acts that took place within the Medicine Lodge. Thus, in the eyes of the jury, Anderson and S.M. had a romantic relationship that ended ten years prior to the date of the offense with no sexual activity thereafter. This makes Anderson's claim - - that the acts, which admittedly occurred in S.M.'s office, were consensual and welcomed by S.M. - - nearly implausible.

We acknowledge that there is no bright-line rule governing the admissibility of evidence under Rule 412(b)(1)(B). Yet the district court's rationale for excluding Anderson's proffered

8

evidence is problematic. The district court excluded the 2007 acts because those encounters occurred at a different place than the indicted offenses. Although there is certainly a difference between private sexual acts and those that take place in public, that does not eliminate, or even substantially reduce, the probative value of such acts in this case. This is especially true given Anderson's claim that his encounters with S.M. took place in atypical locations, such as the Medicine Lodge and a garage, in order to keep the activity hidden from her husband. Further, the prejudicial impact of this testimony was minimal, and any prejudice to S.M. was substantially outweighed by the probative value of this evidence to Anderson's defense of consent. Accordingly, we find that the district court abused its discretion in excluding this evidence.[1]

Regarding the Lodge acts, the district court stated four reasons for excluding this evidence: 1) the remoteness of time; 2) Anderson's testimony was not credible and he did not describe the events with the requisite specificity; 3) the probative value was outweighed by unfair prejudice; and 4) the evidence did not reasonably establish consent such that Anderson's constitutional rights would be violated.

As we stated previously, courts may take into consideration the length of time between the previous sexual encounter and the alleged offense when determining admissibility. If the Lodge acts, which occurred 4 to 5 years before the 2008 incident, were the only evidence offered by Anderson, exclusion on the basis of remoteness in time may have been justified. However, Anderson claimed these acts occurred in the midst of a decade-long physical relationship with S.M. Therefore, the

---

[1]Although the parties did not mention this in their briefs, a review of the record shows that the government withdrew its objection to the admission of the 2007 acts on the morning of trial.

district court should not have viewed the Lodge acts in isolation, but rather as part of a long sexual history that ended only one year prior to the indicted offense.[2]

Although testimony that S.M. had engaged in past sexual acts at her workplace may have been somewhat prejudicial, any such prejudice did not substantially outweigh the evidence's probative value. Anderson's testimony of weekly sexual encounters with S.M. at the Medicine Lodge, if believed, would, at a minimum, help explain the otherwise incredulous act of Anderson initiating sexual contact with S.M. in her office, as alleged in the indictment.

The district court also placed unwarranted emphasis on the fact that most of the Lodge acts occurred in a conference room rather than S.M.'s office. That the encounters in 2003 and 2004 took place in a conference room with multiple windows from which the couple could be seen if the blinds were not properly closed, instead of in S.M.'s office, does not minimize the relevance of these acts to the 2008 acts.

Lastly, although Anderson's testimony regarding the Lodge acts may have been hard for the district court to believe, in the absence of additional evidence indicating that the testimony was false, the district court's exclusion of the Lodge acts on that basis was improper. *See Saunders*, 736 F. Supp. at 701 ("courts are not free to make Rule 412 rulings on the basis of credibility judgments.").

For the above-stated reasons, we find the district court abused its discretion in excluding both the 2007 acts and the Lodge acts.

---

[2]Additionally, one proffered reason for the gap in time between Anderson's sexual encounters with S.M. was Anderson's incarceration in 2005 and 2006 and from the end of 2007 until August 8, 2008.

A district court's abuse of discretion will result in reversal when the error is not harmless. "An error is harmless 'when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Baldwin*, 418 F.3d 575, 582 (6th Cir. 2005) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003). The burden of proving that such evidence is harmless lies with the government. *United States v. Newsom*, 452 F.3d 593, 602 (6th Cir. 2006).

The government claims that the only evidence Anderson offered of previous consensual sexual encounters between him and S.M. is his own testimony. According to the government, because Anderson testified that the 2008 incident was consensual and the jury did not believe him, testimony about more allegedly consensual encounters would have been the same type of he-said, she-said testimony that the jury would not have believed. Therefore, the government argues that exclusion of the evidence was harmless.

We disagree. S.M. was permitted to testify that she had not had a physical relationship with Anderson since 1998. Due to the district court's exclusion of the Rule 412 evidence, Anderson was not allowed to rebut that statement. Had the jury heard Anderson's testimony about his sexual history with S.M. and believed him, it would have made his claim that the 2008 acts were consensual significantly more plausible. Because of the minimal evidence involved in this case, Anderson's conviction of the offense involving S.M. hinged almost entirely on whether the jury believed him or S.M. Contrary to the government's assertion, this increased the importance of allowing Anderson to give testimony about his prior encounters with S.M. so that the jury could consider the 2008 acts in their proper context. Further, although the government introduced testimony of two other witnesses regarding prior acts of sexual misconduct involving Anderson, neither of these witnesses

11

testified that Anderson used any type of force. On the contrary, the witnesses testified that once they told Anderson to stop, he did. The only evidence that Anderson used any type of force with S.M. came from S.M.'s testimony. In sum, we cannot say with any amount of confidence that the verdict against Anderson on the count of attempted aggravated sexual abuse of S.M. would have been the same if the evidence regarding the 2007 acts and the Lodge acts had been admitted.[3]

### III.

Anderson next challenges the district court's rejection of his plea agreement. Because Anderson did not object when the court rejected his plea agreement, we review for plain error. *United States v. White*, 308 F. App'x 910, 916 (6th Cir. 2009).[4]

Plain error will be found only upon demonstration of the following: 1) an error occurred in the district court; 2) the error was plain, i.e., obvious or clear; 3) the error affected defendant's substantial rights; and 4) the adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Page*, 520 F.3d 545, 547 (6th Cir. 2008).

Under Federal Rule of Criminal Procedure 11(c)(1), a "plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the

---

[3]Because we conclude the district court erred in excluding the 2007 acts and Lodge acts under Rule 412(b)(1)(B), we express no opinion on whether such exclusion also violated Anderson's constitutional rights under 412(b)(1)(C).

[4]Although Anderson claims the district court abused its discretion when it rejected his plea agreement, the correct standard of review is plain error.

appropriate disposition of the case . . . ." Fed. R. Crim. P. 11(c)(1)(C). The sentence agreed to by the government will bind the court once it accepts the plea agreement. *Id.*

The government and Anderson entered into a Rule 11(c)(1)(C) plea agreement that had a binding sentence of ninety-six months. Anderson then entered a guilty plea before a magistrate judge. The district court accepted Anderson's plea as recommended by the magistrate judge, but reserved ruling on the plea agreement. Prior to a status conference to discuss Anderson's plea, the district court emailed counsel for both parties and stated that it would not accept the proposed plea agreement. During the status conference, the court explained on the record that it had "advised counsel that I do not accept that limitation on my sentencing discretion," and noted the discrepancy between the guidelines as calculated and the agreed-upon sentence. The court then gave Anderson thirty days to retain new counsel and decide whether he wanted to withdraw his guilty plea.

Anderson subsequently withdrew his guilty plea, pursuant to Federal Rule of Criminal Procedure 11(c)(5), and proceeded to trial on all counts.

At least one circuit has stated that a district court's categorical rejection of a Rule 11(c)(1)(C) plea agreement, without an individualized assessment of the plea agreement at issue, is error. *See In re Morgan*, 506 F.3d 705, 711-12 (9th Cir. 2007). In contrast, another circuit has stated that "the court's categorical refusal to accept pleas pursuant to subsection (C) can only be understood as its refusal to completely yield its discretion in sentencing" and that rejection of such an agreement "due to the court's refusal to permit the parties to bind its sentencing discretion constitutes the exercise of sound judicial discretion." *United States v. Robertson*, 45 F.3d 1423, 1439 (10th Cir. 1995); *see also United States v. Escobar Noble*, 653 F.2d 34, 36 (1st Cir. 1981) (holding that a

court's rejection of a plea agreement so that it can impose a higher sentence than the one stated in a plea agreement is within the court's discretion).

This Circuit has not decided whether a district court's categorical rejection of Rule 11(c)(1)(C) plea agreements is improper. We need not decide the issue here because it is clear that any error committed by the district court was not "plain." *See United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995) ( "[T]he circuit split precludes a finding of plain error."). Accordingly, Anderson cannot prevail on this claim.

## IV.

Based on the foregoing, we affirm the district court's rejection of Anderson's plea agreement. But we vacate the conviction of attempted aggravated sexual abuse of S.M. and remand the case for a new trial.