**NOT RECOMMENDED FOR PUBLICATION**
File No: 18a0092n.06

**Nos. 17-3432/3456**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Feb 23, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE<br>NORTHERN DISTRICT OF<br>OHIO |
| TERRANCE L. FORD and BRIAN L. WILLIAMS, | ) | |
| Defendants-Appellants. | ) | OPINION |

Before: SUHRHEINRICH, SUTTON, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. Codefendants Brian Williams and Terrance Ford appeal their respective sentences for possession with intent to distribute heroin and fentanyl on the grounds that the sentences imposed by the district court were both procedurally and substantively unreasonable. For the reasons explained below, we affirm both sentences.

**I**

**A. Factual Background**

On July 27, 2016, law enforcement officers executed a valid search warrant on a domicile resided in by Williams and Ford. Officers found approximately 125 grams of a heroin/fentanyl admixture, as well as 66 oxycodone tablets, in Williams's bedroom; approximately 14.5 grams of fentanyl in Ford's bedroom; and assorted drug-distribution paraphernalia throughout the house.

**B. Williams's Plea**

Williams entered a guilty plea to the charge of possession with intent to distribute between 40 and 400 grams of a substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Based on Williams's possession of 140.2 grams of fentanyl, his acceptance of responsibility, and his assistance to authorities, the presentence investigation report calculated his offense level as 21. Calculating Williams's criminal-history score to be seven, which placed him in criminal-history category IV, the presentence report determined Williams's Guidelines range to be 57 to 71 months, which was then raised to the statutory mandatory minimum, 120 months of imprisonment.

**C. Ford's Plea**

Unlike Williams, Ford signed a written plea agreement prior to pleading guilty to a single count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). The parties to the plea agreement agreed that "based upon the investigation, the drug amount reasonably attributable to the Defendant is at least thirty-two (32) but less than forty (40) grams of Fentanyl" and used this to calculate a base offense level of 22. The parties also agreed, however, that while they would both "recommend that the Court impose a sentence within the range and of the kind specified pursuant to the advisory Sentencing Guidelines[,] . . . the recommendations of the parties will not be binding upon the Court."

Unlike Ford's plea agreement, his presentence investigation report determined that he was responsible for 140.1 grams of fentanyl, which corresponded to a base offense level of 24, as opposed to the base offense level of 22 calculated in his plea agreement.

### D. Sentencing

The district court issued identical notices of variance to both defendants, writing that it was considering an upward variance "based on the nature and circumstances of the offense, including but not limited to, the proximity of the subject residence . . . to local schools" and "based on the history and characteristics of the Defendant[s]."

At sentencing, the government calculated Williams's Guidelines range to be 70 to 87 months, and the district court adopted this calculation. Citing Williams's "history [and] the lack of deterrence from earlier sentences that have been imposed," the district court then varied upward from the 120-month mandatory minimum and imposed a carceral sentence of 180 months.

At Ford's sentencing, the district court heard evidence from a detective concerning Ford's involvement in heroin distribution and found that Ford was responsible for 155.1 grams of fentanyl,[1] well above the 32 to 40 grams stated in the plea agreement. After calculating the Guidelines range based on this higher quantity of fentanyl, the district court, citing "the close proximity to schools," the drug "epidemic," the "deaths from these types of drugs," and Ford's "history and characteristics," varied upward from the Guidelines range of 46 to 57 months and sentenced Ford to 120 months of incarceration.

### II

We review sentences imposed by the district court for reasonableness. *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008). Our review of a sentence for reasonableness consists of first evaluating the sentence for procedural error and then, if no procedural error is found,

---

[1] The district court appears to have misquoted Ford's presentence report, which found Ford responsible for 140.1 grams of fentanyl. The discrepancy is immaterial because the base offense level is the same for any amount of fentanyl between 40 grams and 160 grams.

considering the substantive reasonableness of the sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

While "a district judge must give serious consideration to the extent" of any variance from the Guidelines and "explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications," we may not presume sentences imposed outside the Guidelines unreasonable. *Id.* at 46–47. And while we "retain[] an important role" in fixing sentencing "mistakes that are substantive," we must not ignore the Supreme Court's stricture that "appellate courts must respect the role of district courts and stop substituting their judgment for that of those courts on the front line." *United States v. Robinson*, 669 F.3d 767, 772–73 (6th Cir. 2012) (internal quotation marks and citations omitted).

When the alleged error is preserved for review, we review for abuse of discretion, *Gall*, 552 U.S. at 51, but when the error is not preserved, we review under the more onerous plain-error standard. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

## A. Williams's Appeal

Williams presents five assignments of error.

### 1

Williams first argues that the district court procedurally erred by adopting the government's calculations under the Sentencing Guidelines and thereby failing to make findings of fact sufficient to support the court's Guidelines calculations. In support of his argument, Williams cites *United States v. Fowler*, which tells us that when a district court is "selecting an appropriate sentence, [it] 'must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" 819 F.3d 298, 304–05 (6th Cir. 2016) (quoting *United States v. Recla*, 560 F.3d 539, 547 (6th Cir. 2009)).

Fed. R. Crim. P. 32(i)(3)(A) makes clear, however, that a sentencing court "may accept any undisputed portion of the presentence report as a finding of fact." And the sentencing court, after ensuring that neither party objected to the presentence report, specifically stated that it would "incorporate by reference the details set forth in the PSI," which included sixteen paragraphs detailing Williams's criminal conduct, as well as a detailed Guidelines calculation. When there are no objections to a presentence report, a sentencing court is perfectly free to incorporate the contents of the presentencing report in making findings of fact. *See, e.g.*, *United States v. Greer*, 872 F.3d 790, 798 n.6 (6th Cir. 2017) ("Regardless, these facts were set out in the PSR and Greer did not object to them there, so the district court would have been entitled to rely on them on that basis.").

2

Williams next argues that the government incorrectly calculated his Guidelines range and that, therefore, when the district court adopted the government's calculations, it necessarily miscalculated Williams's Guidelines range. Specifically, Williams argues that the government, and by extension, the district court, began with a base offense level of 24, increased the base offense level to 27 to account for the 120-month mandatory minimum, decreased the base offense level by one to 26 due to the government's §5K1.1 motion, and then decreased the base offense level by a further three levels because of Williams's acceptance of responsibility, for a final base offense level of 23. Citing USSG §1B1.1's requirement that the Guidelines be applied in order, Williams argues that the district court ought to have started with a base offense level of 24, lowered it by three points to 21 for his acceptance of responsibility, raised it to 27 due to the mandatory minimum, and finally lowered it to 26 because of the government's §5K1.1 motion.

Because Williams reasonably chose not to object to the district court's calculation of a lower Guidelines range, we review for plain error.

Even if Williams's argument about the appropriate method to calculate his Guidelines range is correct, his complaint is that the district court concluded that his final base offense score was 23, when it should have been 26. And under plain error review, a defendant cannot claim that an error that benefits him warrants reversal, because it has not affected his substantial rights. *See, e.g.*, *United States v. Brown*, 391 F. App'x 524, 529–30 (6th Cir. 2010).

3

Williams next argues that when the district court varied from his Guidelines range and imposed a sentence of 180 months of imprisonment, it improperly varied upward from the mandatory minimum of 120 months of imprisonment, as opposed to varying upward from the appropriate range of either 92 to 115 months, which Williams believes was his Guidelines range, or from 70 to 87 months, which the district court calculated as Williams's Guidelines range. Because Williams did not object at sentencing, we review for plain error.

Assuming *arguendo* that it would have been error to vary upward from a sentence of 120 months of imprisonment, Williams cannot show that the sentencing court plainly erred in doing so because he cannot show that the court "obvious[ly] or clear[ly]" erred. *Vonner*, 516 F.3d at 386 (citing *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

At sentencing, the district court said the following, which suggests that it was aware that the Guidelines were separate and distinct from the mandatory minimum and that it was using Williams's Guidelines range as its starting point:

> The cost to society is staggering, by individuals like this individual who choose to traffic in heroin. And a long lengthy sentence—the guidelines are not sufficient in my view. Here we have a statutory penalty of ten years to life which I believe is appropriate for persons of this nature.

The district court then said:

> And obviously the 120 months to ten years in many circumstances might be appropriate. But given the extent of this defendant's history, the lack of deterrence from earlier sentences that have been imposed, ten years is not sufficient. . . . The defendant will be sentenced to the custody of the Bureau of Prisons for a term of 180 months. It is, again, above the ten years, the mandatory—the minimum.

This latter statement could potentially be read as the district court's using the mandatory minimum of 120 months as his baseline and varying therefrom. But reading the court's statements in context, we cannot say that is "obvious or clear" that the district court did not appropriately begin with Williams's Guidelines range (as it indicated in its earlier statement), determined that the Guidelines range was insufficient, turned to Williams's lengthier mandatory minimum and determined that it was also insufficient, and finally varied upward from the Guidelines range and past the mandatory minimum. *See United States v. Van*, 541 F. App'x 592, 595–96 (6th Cir. 2013) (explaining that a reviewing court cannot find plain error where the sentencing court's ambiguous language makes it not "obvious or clear" that an error was committed, even where the error, if committed, was obviously or clearly in error).

4

Williams next argues that the district court failed adequately to justify the variance resulting in the sentence of 180 months. Williams does not, however, indicate which 18 U.S.C. § 3553(a) factors the district court failed to consider when determining his sentence, and a review of the record indicates that the district court considered the relevant § 3553(a) factors at length and adequately described its justification for imposing a sentence of 180 months of incarceration.

Williams's last argument is that the sentence imposed by the district court is substantively unreasonable because it was "greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a)(2). Specifically, he points to his diminished mental capacity caused by several strokes and his lack of a history of violent crime as factors weighing against the district court's upward variance.

But the district court addressed Williams's arguments concerning his mental capacity and his lack of a history of violent crime, finding that the strokes he had suffered had not prevented him from engaging in heroin trafficking and that his extensive history of heroin trafficking and gun possession was sufficiently deleterious to the community's well-being to warrant a high sentence even without a *violent* history of heroin trafficking and gun possession.

It is clear from the transcript that the district court placed a significant but not impermissibly high degree of importance on the impact of Williams's conduct on the local community. Noting that "[h]eroin is devastating our communities" and that "[t]he cost to society is staggering, by individuals like this individual who choose to traffic in heroin," the district court explained that it had "general philosophical difference[s] with the guidelines," which it felt to be "wholly, wholly inadequate to address this kind of conduct for this defendant given his history and characteristics and the nature and extent of his activities in our city and here in Akron, Ohio."

District courts have the discretion to depart from the Guidelines on general policy grounds. *See, e.g.*, *Spears v. United States*, 555 U.S. 261, 265–66 (2009) (per curiam); *United States v. Herrera-Zuniga*, 571 F.3d 568, 583–86 (6th Cir. 2009) (upholding a district court's sentence when the "sentencing transcript leaves no doubt that the district court's policy-based

disagreement with the severity of the recommended sentencing range was a major factor in its decision to impose a harsher sentence").

Policy-based departures are reviewed most closely when the Guidelines reflect the Sentencing Commission's strengths in combining "empirical data and national experience" to "formulate and constantly refine national sentencing standards." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007). But here, the district court specifically articulated its policy differences with the Commission as being predicated on local, not national, conditions that have recently and rapidly changed—specifically the heroin epidemic in Ohio. Because the district court's departure was based on its view that the Guidelines have yet to catch up with the onset of the heroin epidemic generally and do not adequately address the severity of that epidemic in Ohio, we need not engage in an "elaborative discussion" of the reasonableness of the district court's variance, and Williams is unable to provide any reason to think that the district court abused its discretion in this case.[2] *Id.* at 109.

Giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008) (quoting *Gall*, 552 U.S. at 597), we cannot say that the district court committed reversible

---

[2] The Sentencing Commission appears to agree with the district court that the current Guidelines are too low where, as here, fentanyl is at issue, having recently proposed increased penalties under the Guidelines for fentanyl. *See* Proposed Amendments to the Sentencing Guidelines, 83 FR 3869, 3874 (proposed Jan. 26, 2018) ("Part C of the proposed amendment would revise § 2D1.1 to increase penalties for offenses involving fentanyl. The Commission has received comment indicating that the proliferation and ease of availability of multiple varieties of fentanyl and fentanyl analogues ha[ve] resulted in an increased number of deaths from overdoses. Commenters have argued that § 2D1.1 does not adequately reflect the serious dangers posed by fentanyl and its analogues, including their high potential for abuse and addiction. Public health data show[] that the harms associated with abuse of fentanyl and fentanyl analogues far exceed those associated with other opioid analgesics.").

error in weighing Williams's mental capacity and criminal history in the manner in which it did or by considering the opioid epidemic's effect on Ohio.[3]

## B. Ford's Appeal

Ford presents three assignments of error.

1

Ford first argues that the district court departed from his Guidelines range based on "the deaths, overdoses and other suffering" caused by Ford's drug distribution, that this ground for departure was not identified in the presentence report or the government's sentencing memorandum, that the district court's Notice of Possible Variance did not give notice to Ford of this ground for a departure, and that Fed. R. Crim. P. 32(h) and Sixth Circuit precedent require resentencing when the district court departs from a defendant's Guidelines range on the basis of a ground of which the defendant was not on notice.[4]

Ford's argument falters at the first premise, for the record indicates that the district court varied, and not departed, upward. Both the district court and Ford's counsel characterized the above-Guidelines sentence as a variance, not a departure. And the district court specifically predicated the above-Guidelines sentence on its weighing of the § 3553(a) factors, particularly "the needs of the sentencing statute which are just punishment and adequate deterrence and protecting the public," and never mentioned the upward-departure sections of the Guidelines.

Ford's only evidence that the district court departed, and not varied, upwards is the district court's statement that "the argument is, oh, you don't have any direct evidence my client

---

[3] *See generally* Transfer Order at 4, *In Re: Nat'l Prescription Opiate Litig.*, (MDL No. 2804), 2017 WL 6031547, at *3 (U.S. Judicial Panel on Multidistrict Litig. Dec. 5, 2017) (stating that Ohio "has experienced a significant rise in the number of opioid-related overdoses in the past several years and expended significant sums in dealing with the effects of the opioid epidemic").

[4] Ford and the government disagree as to the proper standard of review as to this claim. Because we find no error, we need not determine whether that error was plain.

was responsible for anyone's death. The circumstantial evidence is such that anyone who is selling these powerful opiate drugs, more likely than not either there has been a death or an overdose or someone who has suffered because of that activity."

Ford urges that we read this as the district court's ascribing death or significant physical injury to Ford's distribution, factors captured by USSG §§ 5K2.1 and 5K2.2, which license departures, and not by § 3553(a), which licenses variances. But the tenor of the sentencing hearing and the grammatical structure of the district court's statement[5] both make it clear that the sentencing court was merely describing the severity of the opioid crisis generally and justifying its view that a proper weighing of the § 3553(a) factors, which include the need "to reflect the seriousness of the offense . . . to provide just punishment [and] to protect the public from further crimes," warranted an upward variance.

2

Ford next argues that the district court erred in finding that he was responsible for more than 40 grams of fentanyl. Because Ford preserved this argument, we review the district court's factual finding for clear error. *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003). A finding of fact will be clearly erroneous only "when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ibid.* (quoting *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997)).

Based on the testimony of an officer investigating Williams and Ford, who was told by an informant and by Williams's girlfriend that Ford was involved both in selling drugs with Williams and with the drug paraphernalia recovered from the house (most importantly, a Proctor

---

[5] Importantly, the district court did not say that "there has been a death or an overdose *and* someone who has suffered," which would have implied that Ford had caused a death or an overdose.

Silex electric grinder "used to break down heroin . . . for further distribution," was recovered from the basement in which Ford resided), the district court found that "[i]t is clear and certainly established by a preponderance of the evidence, if not more so, that Mr. Ford was an active participant in the sale of the drugs" and held him responsible for the entire quantity of heroin found during the search.

Ford points to the signed plea agreement, in which the government stipulated that he was responsible for only under 40 grams of fentanyl, and the government's statement at sentencing that it chose to offer Ford the plea agreement in part because a jury "could just as well find that [Ford] only knows about the item that's down [in his room] and that that's Mr. Williams's drugs up there."

The district court, however, was permitted to find that Ford was responsible for more heroin than stipulated to in the plea agreement so long as its determination was "based on reliable information and supported by a preponderance of the evidence." *United States v. Kisinksi*, 480 F.3d 769, 777 (6th Cir. 2007). Notwithstanding the government's view that a jury, bound by the beyond-a-reasonable-doubt standard, *could* find that Ford was only responsible for the heroin found in his room, the district court, bound only by the preponderance-of-the-evidence standard, had sufficient evidence before it to find that he was also responsible for the drugs found in his distribution partner's room.

3

Ford next argues that his sentence is substantively unreasonable. We review the substantive reasonableness of his sentence for abuse of discretion. *Gall*, 522 U.S. at 51. A sentence is substantively unreasonable if the district court selected the sentence arbitrarily,

based the sentence on impermissible factors, or gave an unreasonable amount of weight to any one factor. *United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011).

This argument has three subcomponents. Ford first suggests that "the district court selected the sentence arbitrarily," but immediately undercuts his argument by suggesting that the district court based its decision on "the court's personal philosophy concerning the evils of drugs and its belief that the sentencing guidelines were too low for this offense." The articulated basis is not arbitrary and, as discussed above, district courts have the discretion to vary from the Guidelines on policy grounds.

Again citing the district court's statement that the "circumstantial evidence is such that anyone who is selling these powerful opiate drugs, more likely than not either there has been a death or an overdose or someone who has suffered because of that activity," Ford then argues that the district court found that he had caused a death, an overdose, or suffering without sufficient evidence that Ford had done so and that the district court impermissibly based his sentence on these unproven facts. Even assuming that the district court was finding that Ford, and not heroin distributors generally, caused these harms, because it is permissible for a district court to infer that a distributor of heroin has caused suffering, *see, e.g.*, *United States v. Hodges*, 641 F. App'x 529, 531–32 (6th Cir. 2016), it is not error for a district court to infer that a distributor of heroin has either caused suffering *or* other harms.

Finally, Ford argues that the district court placed unreasonable weight on Ford's criminal history and erroneously considered the proximity of Ford's residence, from which he distributed heroin, to local schools. Neither of these arguments is developed, and with good cause. The district court spent significant time explaining why Ford's criminal history was underrepresented by his Guidelines range, and this court must "give due deference to the district court's decision

that the Section 3553(a) factors, on a whole, justify the extent of [a] variance." *Grossman*,

513 F.3d at 596. Nor can Ford point to any case suggesting that it is impermissible for a district

court to consider a crime's proximity to schools when considering the appropriate sentence.

## III

For the forgoing reasons, we **AFFIRM**.